WILLIAM A. LOGAN, JR. (BAR NO. 115042)
LAURA M. MOONEY (BAR NO. 203692)
PUTTERMAN LOGAN & GILES LLP
580 California Street, 16th Floor
San Francisco, CA 94104

Mail service address:
2175 N. California Blvd, Suite 805
Walnut Creek, California  94596

Tel:  (415) 839-8779
Fax: (415) 376-0956
E-mail: wlogan@plglawyers.com

Attorneys for Plaintiff
PAG-DALY CITY, LLC, dba City Toyota

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAG-DALY CITY, LLC dba CITY TOYOTA, a California limited liability company,<br><br>    Plaintiff,<br><br>  v.<br><br>QUALITY AUTO LOCATORS, INC.; et al.;<br><br>    Defendants. | No. 3:12-cv-03907-WAH<br><br>**MASTER MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEALER DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date: January 31, 2013<br>Time: 8:00 a.m.<br>Courtroom: 8<br><br>Before Judge William H. Alsup |

1

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION .................................................................................................. 1

II.  FACTS ................................................................................................................ 3

III. LEGAL ARGUMENT ......................................................................................... 6

A. Defendant Airport Toyota's Conversion of Property from Plaintiff City Toyota Was Purposely Directed at the Forum, Subjecting Defendant to Personal Jurisdiction in California ................................................................................................................. 7

1. The dealer defendants intentionally took possession of property belonging to plaintiff City Toyota.................................................................................................. 7

2. Defendant Airport Toyota's conduct was aimed at the forum. ........................... 9

3. Defendant Airport Toyota caused harm in California......................................... 11

B. Plaintiff City Toyota's Claims Against Defendant Airport Toyota Arise Out of Its Forum Related Activity ................................................................................................ 11

C. Defendant Airport Toyota Fails to Present Evidence Establishing a Compelling Case that the Exercise of Jurisdiction in California Would be Unreasonable ................. 12

D. The Dealer Defendants' General Agency Arguments Relating to the Locators Misses the Point. ........................................................................................................ 14

IV. CONCLUSION................................................................................................... 16

1
2

# **TABLE OF AUTHORITIES**

**Page(s)**

3

**FEDERAL CASES**

4

*Ali v. Fasteners For Retail, Inc.* (E.D.Ca. 2008)

5
     544 F.Supp.2d 1064 ........................................................................................ 8

6

*Ballard v. Savage* (9th Cir. 1995)

7
     65 F.3d 1495 ................................................................................ 11, 12, 13, 14

8

*Bancroft & Masters, Inc. v. Augusta National, Inc.* (9th Cir. 2000)
     223 F.3d 1082 ........................................................................................ 9, 10

9

*Calder v. Jones* (1984)

10
     465 U.S. 783.......................................................................................... passim

11

*CollegeSource, Inc. v. AcademyoOne, Inc.* (9th Cir. 2011)

12
     653 F.3d 1066 ........................................................................................ passim

13

*Dahon North America, Inc. v. Hon* (C.D.Cal. 2012)
     2012 WL 1413681 ................................................................................ 9, 11

14

*Data Disc, Inc. v. Systems Technology Assos.* (9th Cir.1977)

15
     557 F.2d 1280 ........................................................................................ 3, 11

16

*Dole Food Co., Inc. v. Watts* (9th Cir. 2002)

17
     303 F.3d 1104 ........................................................................................ passim

18

*Fiore v. Walden* (9th Cir. 2011)
     657 F.3d 838 ........................................................................................ 11, 14

19

*Helicopteros Nacionales de Colombia, S.A. v. Hall* (1984)

20
     466 U.S. 408.............................................................................................. 6

21

*International Shoe Co. v. Washington* (1945)

22
     326 U.S. 310.............................................................................................. 6

23

*Kayne v. Ho* (C.D.Cal. 2010)
     2010 WL 4794824 .................................................................................... 9

24

*Kremen v. Cohen* (9th Cir. 2003)

25
     337 F.3d 1024 ........................................................................................ 7, 8

26

*Menken v. Emm* (9th Cir. 2207)

27
     503 F.3d 1050 ........................................................................................ 13

28

*Ochoa v. J.B. Martin & Sons Farms, Inc.* (9th Cir. 2002)
    287 F.3d 1182 ................................................................................................ 15

*Pebble Beach Co. v. Caddy* (9 Cir. 2006)
    453, F.3d 1151, 1154 ....................................................................................... 3

*Shaffer v. Heitner* (1977)
    433 U.S. 186 ..................................................................................................... 6

*Z-Rock Communications Corp. v. William A. Exline, Inc.* (N.D.Cal. 2004)
    2004 WL 1771569 .......................................................................................... 15

**CALIFORNIA CASES**

*City of Los Angeles v. Meyers Bros. Parking System, Inc.* (1975)
    54 Cal.App.3d 135 .................................................................................... 14, 15

*Columbia Pictures Corp. v. De Toth* (1987)
    87 Cal.App.2d 620 ......................................................................................... 15

**CALIFORNIA STATUTES**

Cal. Bus. & Prof. Code § 17200 ............................................................................ 1, 7

Cal. Civ. Code § 2295 ............................................................................................. 14

Cal. Civ. Code § 2297 ............................................................................................. 14

Cal. Civ. Code § 2332 ............................................................................................. 15

Cal. Pen. Code § 496 ................................................................................................ 7

Cal. Pen. Code § 496(c) ............................................................................................ 1

**OTHER AUTHORITIES**

Fed. Rules Civ. Proc., Rule 12(b)(2) ..................................................................... 1, 3

Federal Rules of Evidence, Rule 1002 ...................................................................... 4

## I.     INTRODUCTION

Plaintiff PAG-DALY CITY, LLC, dba City Toyota ("City Toyota") is a California based authorized Toyota dealer.  Defendants Herb Chambers 1168, Inc., dba Herb Chambers Toyota; PLE Enterprises, Inc., dba Rolling Hills Toyota; Page Imports, Inc., dba Page Toyota; Faulkner Trevose, Inc., fka Faulkner Toyota, Inc., dba Faulkner Toyota; Muller Automotive, Inc., dba Lawrence Toyota; Walker Auto Group, Inc., dba Walker Toyota; Joseph T of D Co., dba Joseph Airport Toyota; Charles Barker Enterprises, Inc., dba Charles Barker Toyota; and BWTI, Inc., dba Bert Wolfe Toyota (collectively, "dealer defendants") are also authorized Toyota dealers but they do business in other states.  In this action, City Toyota seeks to recover almost a million dollars of losses it sustained in California as a result of the unauthorized transfer of hundreds of "A" status vehicles from its inventory in California to the inventory of the defendant dealers during a period of critical inventory shortages among Toyota dealers nationwide.  The unauthorized transfers were the direct result of the defendant dealers' monetary payments to "auto locators", who, in turn, then induced a miscreant City Toyota employee located in California to initiate the transfers from City Toyota's inventory in California.  Although Toyota dealers regularly transfer vehicles among themselves, when the transfer is legitimate and authorized, the dealer receiving the vehicles – here the dealer defendants – pays the selling dealer ***directly***.  The defendant dealers here admittedly did not make any payments to City Toyota.  Rather, they paid only the "auto locators" they had engaged.  Those locators then forwarded a portion of the dealer defendants' payment to City Toyota's miscreant employee in California as his share of the proceeds of the theft of City Toyota's property.  As a result of their conduct, the dealer defendants ended up with City Toyota's vehicles, which should have been delivered to City Toyota in California, being delivered to them.

City Toyota seeks to recover its losses suffered in California from the dealer defendants based on claims for conversion, knowing receipt of stolen property under California Penal Code section 496(c) and for unfair business practices under California Business & Professions Code section 17200.  The defendant dealers have moved to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  Although variously formulated, the crux of the defendant dealers' arguments is that the auto locators concealed the identity of the transferring dealer, here City Toyota, at least until after the

1    transaction had been "completed," and City Toyota therefore cannot satisfy the "effects test" for

2    personal jurisdiction.  According to the dealer defendants, by permitting the locators to conceal City

3    Toyota's identity, they did not "knowingly" aim their conduct at California or a California resident.

4    See *CollegeSource, Inc. v. AcademyoOne, Inc.* (9th Cir. 2011) 653 F.3d 1066, 1076.

5          As explained in detail in the Declaration of David J. Moeller submitted herewith, the dealer

6    defendants did know both before and after the unauthorized transfers that the vehicles were from City

7    Toyota's inventory in California.  The Toyota inventory system provides complete transparency

8    among Toyota dealers to the inventory of all other Toyota dealers.  Any Toyota dealer at any time has

9    complete access to the entire inventory of any other Toyota dealer and may gain such access without

10   the other dealers' knowledge or consent.  This is how the dealer defendants necessarily selected the

11   vehicles in City Toyota's inventory that were later transferred to them, *i.e.*, they accessed City

12   Toyota's inventory and selected the vehicles they wanted transferred.  In doing so, they knew that

13   they were accessing the inventory of a Toyota dealer located in Daly City, California.  Moreover, the

14   moment that City Toyota's vehicles were transferred to the defendant dealers' inventory, City

15   Toyota's identity and location as the transferring dealer became part of the defendant dealers' own

16   inventory records thereby further confirming the source of the vehicles and the entity that would be

17   damaged as a result of the transfer.  Accordingly, the dealer defendants had full knowledge of the

18   source of the vehicles and the harm to City Toyota in California in order to satisfy the "effects test"

19   for personal jurisdiction.  The dealer defendant also expressly aimed their conduct toward City

20   Toyota when they directed the locators, which do not have any access to the Toyota inventory

21   system, to instruct City Toyota's employee in California to transfer the specific vehicles from City

22   Toyota's that they had selected from it.

23         There are nine dealer defendant motions making the same personal jurisdiction in very similar

24   circumstances.  In order to minimize redundancy and duplication and the burden on the Court, City

25   Toyota submits this memorandum and the "Master" Declaration of David J. Moeller in support of its

26   opposition to all of the dealer defendants' motions in order to address the arguments that are common

27   to each of them.  With respect to any separate matters that should be addressed as to a specific dealer

28

1    defendant, City Toyota has submitted an additional memorandum directed to that dealer defendant
2    and separate declaration of David J. Moeller.

3    **II.    FACTS**

4         Because this is a motion to dismiss for lack of personal jurisdiction brought under Federal
5    Rule 12(b)(2), City Toyota is only required to establish a prima facie case supporting personal
6    jurisdiction. *Pebble Beach Co. v. Caddy* (9 Cir. 2006) 453, F.3d 1151, 1154; *Data Disc, Inc. v.*
7    *Systems Technology Assos*. (9th Cir.1977) 557 F.2d 1280, 1285.  Plaintiff City Toyota is ***not***
8    required, at this early stage of the proceedings, to prove by a preponderance of the evidence facts
9    substantiating the exercise of personal jurisdiction over the dealer defendants. *Id.*  City Toyota's
10   allegations in the Complaint are presumed true for purposes of this motion when not contested by
11   admissible evidence, and reasonable inferences are to be drawn in plaintiff City Toyota's favor, with
12   the court assuming credibility. *CollegeSource, Inc. v. AcademyOne, Inc.* (9th Cir. 2011) 653 F.3d
13   1066, 1073.  Any conflicts in the declarations are to be resolved in City Toyota's favor. *Id.*

14        Plaintiff City Toyota and the dealer defendants operate authorized Toyota automobile
15   dealerships.  Compl., ¶ 16.  Plaintiff City Toyota's dealership is located in California, and the
16   defendant dealerships are located in various other states.  Compl., ¶¶ 1, 6-15.  As authorized Toyota
17   dealers, plaintiff City Toyota and each of the defendant dealerships participate in the Toyota
18   allocation system for Toyota vehicles.  Under that system, Toyota Motor Sales U.S.A., Inc.
19   ("Toyota") allocates specific vehicles it has scheduled for production but has not yet manufactured to
20   regional areas in the United States.  The region then allocates those specific vehicles to particular
21   dealerships within the region.  The regional allocation is based in part on the dealers' past sales
22   performance—dealerships with a larger volume of past sales receive a larger number of Toyota
23   vehicles.  Plaintiff City Toyota is a regional sales leader.  Compl., ¶¶ 16-17

24        Once a dealer has received notice of a vehicle allocation, the dealer has a few days to accept
25   or reject the specific vehicles in the allocation.  Once the dealer has accepted the vehicles, they
26   appear become part of the dealer's inventory.  These vehicles, not yet manufactured but scheduled for
27   production, are referred to as "A" status vehicles.  Once the vehicles are allocated to and accepted by

28

1    the dealership, the dealer has the exclusive right to receive the "A" status vehicles and it cannot

2    rescind its acceptance.  With respect to the "A" status vehicles, Toyota dealers may alter

3    specifications, subject to certain Toyota guidelines, and may commit to sell the vehicles to customers.

4    Toyota dealers may also trade "A" status vehicles to other authorized Toyota dealers.  Because these

5    "A" status vehicles have not yet been delivered to any dealership, these trades or transfers are

6    conducted electronically, using Toyota's internal inventory system that is accessible only to

7    authorized Toyota dealers and from the premises of the dealership.  When the vehicle has been

8    manufactured and is ready to be shipped, Toyota delivers the vehicle to the dealer shown in Toyota's

9    inventory system as owning the right to receive the vehicle.  Compl., ¶¶ 16-17; Moeller Decl., ¶ 4.

10          Every Toyota dealer nationwide has total access to the entire inventory listing of every other

11   Toyota dealer, including vehicles in "A" status, in "F" status (which are vehicles that have been

12   manufactured and are in freight mode) and in "G" status (vehicles on the ground at a Toyota dealer's

13   lot).  Moeller Decl., ¶ 5.  This is how Toyota dealers generally select vehicles for trade or transfer,

14   *i.e.*, by accessing the inventory of other Toyota dealers and selecting the vehicles of interest.  Moeller

15   Decl., ¶ 5.  Auto locators and others do not have any access to the inventory of Toyota dealers.

16   Moeller Decl., ¶ 6.  Although City Toyota's miscreant employee theoretically could have provided a

17   physical listing of inventory to auto locators, it would have been difficult for him to have done so

18   without someone at City Toyota questioning what he was doing.  Moeller Decl., ¶ 8.  He had no

19   scanner, and if he were to attempt to fax the list, he would have needed to use a fax in either the

20   finance director's or general sale manager's office.  Moeller Decl., ¶ 8.  Rather than send lists, he

21   simply needed to tell an auto locator to inform the other dealer to look at the "A" status vehicles in

22   City Toyota's inventory, or a particular make and model of "A" status vehicles in City Toyota's

23   inventory (e.g., Corollas), in order to get all necessary information in order to make a selection.

24   Conducting the selection process in this way would provide all the necessary information regarding

25   model, options and colors and, more importantly in the context of unauthorized trades here at issue, it

26   would leave no paper trail.  Moeller Decl., ¶ 8.[1]

27   ---

[1] Numerous dealer defendants claim that they received lists of vehicles with redactions of the dealer field and VIN numbers for the vehicles, but none of the dealer defendants have produced any such lists.  Statements in declarations asserting the existence of such lists are therefore inadmissible.  Rule 1002, Federal Rules of Evidence.

28

1   The vehicle transfer or trade forms used by the auto locators involved in the unauthorized

2   transfers here at issue identify the selling dealer, including its location.  Moeller Decl. [Walker], ¶ 7

3   Ex A.  These forms with the identifying information are provided to the acquiring dealer before they

4   are signed and become formal agreements.  Moeller Decl. [Walker], ¶ 7 Ex A.  Accordingly, the

5   acquiring dealer knows the identity and location of the transferring dealer before it formally commits

6   itself with the locator to the transfer.  Moeller Decl., ¶ 7.

7   Moreover, when a Toyota dealer receives a trade of an "A" status vehicle into its inventory,

8   the Toyota dealer's inventory report identifies the dealer that transferred the vehicle.  Moeller

9   Decl., ¶ 7.  Toyota dealers do not pay for vehicles until they confirm they have actually received

10  them.  Moeller Decl., ¶ 7.  The dealer thus again sees the identity of the dealer from which the

11  vehicles originated as part of the confirmation process.  Moeller Decl., ¶ 7; Marikar Decl., ¶ 7 Ex. D.

12  A transfer of Toyota vehicles in "A" status is a **direct** transaction between authorized Toyota

13  dealers.  That transfer cannot be executed by or through a car "locator" because only Toyota dealers

14  have access to Toyota's inventory system.  Only the Toyota dealer whose vehicles are in "A" status

15  may transfer them to another authorized Toyota dealer.  And, the transfer must be executed from

16  within the premises of the transferring dealership, which in this case was City Toyota in California.

17  Every Toyota dealer knows this.  Moeller Decl., ¶ 9.

18  Transfers between Toyota dealers are often referred to as "trades" because Toyota dealers

19  actually trade vehicles in "A" status in order to **balance** their inventories, and the consideration in

20  that situation is the exchange of vehicles rather than a monetary payment.  In those instances in which

21  a dealer is acquiring vehicles from the inventory of another Toyota dealer without providing that

22  dealer vehicles from its inventory, monetary consideration is paid **directly** to the selling dealer **after**

23  the acquiring dealer has confirmed that the "A" status vehicles have been received in its inventory.  A

24  third party locator neither owns nor has a right to the Toyota vehicles and the consideration for the

25  trade would never be paid to the broker if the trade were legitimate.  Rather, the Toyota dealer that

26  engaged the broker would pay the commission separately to the broker.  Moeller Decl., ¶ 12.

27  Nothing in the declarations submitted by the dealer defendants contradicts the basic fact –

28  alleged more fully in the complaint – that when they converted the vehicles at issue from plaintiff

City Toyota, they *knew that the vehicles were taken from the inventory allocation of a Toyota dealership located in Daly City, California*.  Compl., ¶ 48.  Indeed, most of the declarations filed by most of the dealer defendants remain silent as to the details of the actual transfers at issue, instead asking this court to decline to exercise personal jurisdiction over them for the wrongful taking of property belonging to a California resident based on nothing other than generalities about how they say trades *typically* occur.  These were obviously no typical trades.

## III.   LEGAL ARGUMENT

This court may exercise personal jurisdiction over the non-resident dealer defendants provided they have "certain minimum contacts" with California "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 (internal quotation marks omitted).  City Toyota does not contest that the dealer defendants' forum-related activities are not so continuous and systematic as to subject them to general jurisdiction in California. *Helicopteros Nacionales de Colombia, S.A. v. Hall* (1984) 466 U.S. 408, 415.  Of course, that is not a barrier to the court finding that they are subject to personal jurisdiction in this action.  The determination of whether a court has personal jurisdiction over a defendant "focuses on the relationship among the defendant, the forum, and the litigation." *Calder v. Jones* (1984) 465 U.S. 783, 788, citing *Shaffer v. Heitner* (1977) 433 U.S. 186, 204.  Where, as here, the effects of the dealer defendants out-of-state conduct were aimed at California, jurisdiction in California is proper on claims for relief arising out of that conduct.  "An individual injured in California need not go to [another state] to seek redress from persons who, though remaining in [another state], knowingly cause the injury in California." Id. at 789.

The Ninth Circuit employs a three-pronged test that, when satisfied, allows this court to assert specific jurisdiction over the dealer defendants: (1) they must have purposefully direct their activities or consummated some transaction with the forum or a resident thereof; (2) plaintiff City Toyota's claim must be one that arises out of or relates to the dealer defendants forum-related activities, and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable. *CollegeSource, Inc. v. AcademyOne, Inc.* (9th Cir. 2011) 653 F.3d 1066, 1076.  Each of

1    the dealer defendants' conduct, expressly aimed at property located in California and a forum

2    resident, namely City Toyota and the conversion of vehicles in "A" status in its inventory, supports

3    the exercise of personal jurisdiction over them.

4    **A.    Defendant Airport Toyota's Conversion of Property from Plaintiff City Toyota**
     **Was Purposefully Directed at the Forum, Subjecting Defendant to Personal**
5    **Jurisdiction in California**

6    Plaintiff City Toyota has alleged claims for relief against the dealer defendants for

7    conversion, Unfair Business Practices under Cal. Bus. & Prof. Code § 17200 and violation of Cal.

8    Pen. Code § 496 (receipt of stolen property).  When these types of claims are alleged, the question of

9    whether a non-resident defendant purposefully directed its activities at the forum is determined by

10   application of the "effects test" articulated in *Calder v. Jones. CollegeSource,* 653 F.3d at 1076

11   (holding "effects" test applied to claims for misappropriation of property, violation of criminal

12   computer tampering statute, violation of Cal. Bus. & Prof. Code § 17200 and unjust enrichment).

13   The *Calder* "effects" test requires a three part inquiry into the nature of the defendant's acts:

14   "In tort cases, we typically inquire whether a defendant 'purposefully
     direct[s] his activities' at the forum state, applying an 'effects' test that
15   *focuses on the forum in which the defendant's actions were felt, whether*
     *or not the actions themselves occurred within the forum*.  The "effects"
16   test, which derives from the Supreme Court's decision in *Calder v. Jones*,
     [] requires that the defendant allegedly must have (1) *committed an*
17   *intentional act, (2) expressly aimed at the forum state, (3) causing harm*
     *that the defendant knows is likely to be suffered in the forum state*."
18

19   *CollegeSource*, 653 F.3d at 1077 (internal citations and quotations omitted; emphasis added).[2]

20   **1.    The dealer defendants intentionally took possession of property belonging**
     **to plaintiff City Toyota.**
21

22   The Complaint alleges that the dealer defendants committed the intentional act of taking

23   possession of the Toyota vehicles in "A" status originally allocated to plaintiff City Toyota in

24   California.  Compl., ¶ 27, 29, Ex. A.  While Toyota vehicles in "A" status have not yet been built and

25   delivered to a Toyota dealership, Toyota has committed to producing and delivering them to the

26   Toyota dealer.  These "A" status vehicles are a property right that can be the subject of a conversion

27   claim, even if at the time of their conversion is memorialized in only electronic form.  *Kremen v.*

28   _____
     [2] All *emphasis* added, unless otherwise noted.

1    *Cohen* (9th Cir. 2003) 337 F.3d 1024, 1030-1035 (recognizing conversion claim for wrongful taking

2    of a domain name); *Ali v. Fasteners For Retail, Inc.* (E.D.Ca. 2008) 544 F.Supp.2d 1064, 1072

3    (recognizing conversion claim for wrongful taking of software source codes, cost data and part

4    numbers).  As the *Kremen* court held, property is subject to conversion if there is an interest capable

5    of precise definition, it is capable of being exclusively possessed or controlled, and the putative

6    owner has a legitimate claim to exclusivity.  *Kremen*, 337 F.3d at 1030.  Here, the "A" status vehicles

7    are precisely identified by make, model, temporary VIN number, and other vehicle details.  Indeed,

8    the make and model of the "A" status vehicle determines whether or not a dealer will trade it.  An

9    "A" status Corolla is not the same property as an "A" status Prius, and an "A" status Corolla with a

10   temporary VIN number of 12345 is not the same property as an "A" status Corolla with a temporary

11   VIN number of 56789.  Toyota vehicles in "A" status have value, as evidenced by the willingness of

12   Toyota dealers to exchange them for other Toyota vehicles, or they pay money to a selling Toyota

13   dealer to obtain the vehicle in "A" status.  *Id*.  Once the Toyota dealer has accepted an allocation of

14   "A" status vehicles, the vehicles are shown in Toyota's inventory system as belonging to that dealer

15   and the dealer has the exclusive right to receive the vehicles to the exclusion of all other Toyota

16   dealers.  Compl., ¶ 16.  When the vehicles identified in Exhibit A to the Complaint were allocated to

17   plaintiff City Toyota and accepted by it, City Toyota had the legitimate claim to exclusively receive

18   delivery of those vehicles and sell them to the retail public.  Thus, the "A" status vehicles identified

19   on Exhibit A constituted valuable property rights belonging to plaintiff City Toyota that the dealer

20   defendants wrongfully took possession of.  Further, as alleged in the Complaint, after the dealer

21   defendants took possession of City Toyota's "A" status vehicles, they then accepted delivery of those

22   vehicles and deprived plaintiff City Toyota of the right to sell those vehicles to California residents in

23   California.  *Id*., ¶ 27, 35.

24       None of the dealer defendants denies the allegations in the Complaint that it received vehicles

25   in "A" status that had been allocated to plaintiff City Toyota, and thus, those allegations must be

26   accepted as true for purposes of this motion.  *CollegeSource*, 653 F.3d at 1073.  Obtaining property

27   that belonged to the plaintiff is an intentional act satisfying the first prong of the *Calder* "effects" test,

28   regardless of whether the defendant claims the act was not wrongful.  *CollegeSource*, 653 F.3d at

8

1   1077 (intentional act alleged where defendant downloaded material from the plaintiff's website and

2   republished it on defendant's website); *Dahon North America, Inc. v. Hon* (C.D.Cal. 2012) 2012 WL

3   1413681 at *4 (in conversion action, the act of receiving the plaintiff's property is an intentional act,

4   even if the defendant's receipt of the property was entirely passive and without knowledge of any

5   wrongdoing; *Kayne v. Ho* (C.D.Cal. 2010) 2010 WL 4794824 at *5 (act of receiving assets alleged

6   to be fraudulently transferred was intentional act).  Thus, the first prong of the *Calder* "effects" test is

7   satisfied.

8                    **2.      Defendant Airport Toyota's conduct was aimed at the forum.**

9           The dealer defendants' conduct was expressly aimed at California, the state where City

10   Toyota is located and where its vehicles in "A" status were possessed and owned prior to defendants'

11   wrongful acts.  Compl., ¶¶ 1, 16, 19.  In the Ninth Circuit the 'express aiming' requires only that "the

12   defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant

13   knows to be a resident of the forum state."  *Bancroft & Masters, Inc. v. Augusta National, Inc.* (9th

14   Cir. 2000) 223 F.3d 1082, 1087.

15           The Complaint alleges that the dealer defendants obtained "A" status vehicles originally

16   allocated to City Toyota without plaintiff's consent.  Compl., ¶ 27, Ex. A.  The Complaint further

17   alleges that "[a]t the time [the dealer defendants] received vehicles that were originally allocated to

18   plaintiff, [the dealer] *defendants knew that the vehicles were taken from the inventory allocation of*

19   *a Toyota dealership located in Daly City, California,* and that plaintiff owned the right to receive

20   delivery of each of the vehicles set forth on Exhibit A before it was transferred to [the dealer

21   defendants]."  Compl., ¶ 28.  The dealer defendants do not deny any of these allegations.

22           The thrust of the dealer defendants' collective arguments against jurisdiction is that they

23   either did not know the source of the vehicles they received before the transactions were "completed"

24   and/or that they did not know that the transfers were unauthorized.  As explained above, the dealer

25   defendants' claim of ignorance as to the source of the vehicles is belied by the evidence

26   demonstrating the complete transparency of the Toyota inventory system, both before and after the

27   transfers had been made, as well as the inability of City Toyota's miscreant employee to share that

28   inventory information without the dealer defendants' directly accessing it.  Further, a defendant's

1   proclaimed indifference to harming a forum resident is no obstacle to this court exercising

2   jurisdiction in this action.  The issue is whether the dealer defendants are alleged to have engaged in

3   wrongful conduct targeted at a plaintiff whom they knows to be a resident of the forum.  *Bancroft &*

4   *Masters,* 223 F.3d at 1087.  That is what the Complaint alleges, and the slim evidence that the dealer

5   defendants provide in connection with their motions confirms the truth of the allegations.

6          Finding the dealer defendants subject to personal jurisdiction in the forum from which they

7   wrongfully obtained plaintiff City Toyota's property is consistent with numerous controlling

8   authorities, including authorities where the defendant's actions took place outside the forum but were

9   aimed at a forum resident.  In *Bancroft & Masters*, the Ninth Circuit found the non-resident

10  defendant expressly aimed its conduct at California when it sent a letter to Virginia with the alleged

11  intent of disrupting the plaintiff's business in California.  223 F.3d at 1087.  In *CollegeSource*,

12  express aiming was found where the non-resident defendant retained independent contractors located

13  in China to develop website content, which the Chinese contractors did by downloading content from

14  the California plaintiff's website and republishing it on the defendant's website.  653 F.3d at 1077.

15  In these and numerous other cases, the court found that the defendant was subject to personal

16  jurisdiction in California based on allegations that the defendant engaged in wrongful conduct, the

17  effects of which were felt by a plaintiff whom the defendant knows to be a resident of the forum

18  state.  *See also Calder,* 465 U.S. at 789; *Dole Food Co., Inc. v. Watts* (9th Cir. 2002) 303 F.3d 1104,

19  1111.  So, too, the dealer defendants and their locators aimed their conduct at California by

20  wrongfully obtaining vehicles in "A" status from City Toyota's inventory, thus depriving a forum

21  resident of its property.  They also deprived City Toyota of the right to sell those vehicles and make a

22  profit, in California.

23         As the unsuccessful defendant in *CollegeSource* could not avoid personal jurisdiction on its

24  agent, the dealer defendants cannot avoid personal jurisdiction by blaming their misconduct on their

25  "locator" or agent or independent contractor or whatever label is assigned to them at this stage of the

26  proceedings, nor by making unsubstantiated claims that it did not know who plaintiff City Toyota is,

27  or where it is located.  653 F.3d at 1077-1079.  The dealer defendants admittedly conducted the

28  transfers at issue with a California dealership.  They cannot now plausibly claim that they could not

foresee being haled into a California court to answer for them and/or to defend their legitimacy given the circumstances under which they were conducted.   Compl., ¶¶ 21-22, 25, 28-29; *see Calder,* 465 U.S. at 789.

### 3.      Defendant Airport Toyota caused harm in California.

The final prong of the *Calder* "effects" test is the requirement that the dealer defendants' wrongful taking of property belonging to a California resident inflicted harm on City Toyota in California.  An entity incurs economic loss, for jurisdictional purposes, in the forum where it is located and doing business.  *CollegeSource*, 653 F.3d at 1079; *Dole*, 303 F.3d at 1113-1114.  City Toyota is located in and does business in California.  Compl., ¶¶ 1, 16, 19.  Therefore, the dealer defendants caused harm that they knew would be suffered by City Toyota in the forum state.  *Calder*, 465 U.S. at 789; *CollegeSource, id* at 1079*; Dole, id* at 1114.*; Dahon North America,* 2012 WL 1413681 at \*5.

Defendants' arguments to the contrary seek to argue the merits of this action.  Those arguments, unsupported by any evidence, are irrelevant to the pending motion, which is confined to the question of whether the Complaint and materials submitted on this motion demonstrate facts that plausibly support a finding of personal jurisdiction over defendants who converted property from a resident of California.  *Data Disc, Inc. v. Systems Technology Associates, Inc.* (9 Cir. 1977) 557 F.2d 1280, 1285.

### B.      Plaintiff City Toyota's Claims Against Defendant Airport Toyota Arise Out of Its Forum Related Activity

The exercise of specific jurisdiction over a non-resident defendant is proper where the plaintiff's claims arise out of or relate to the defendant's forum-related activities.  *CollegeSource,* 653 F.3d at 1076.  City Toyota's claims for relief against the dealer defendants all arise out of their actions in wrongfully obtaining property belonging to City Toyota, a resident of California.  The Ninth Circuit follows a "but for" test to determine forum-related conduct.  *Fiore v. Walden* (9th Cir. 2011) 657 F.3d 838, 854.; *Ballard v. Savage* (9th Cir. 1995) 65 F.3d 1495, 1500.  The inquiry is simple: but for the dealer defendants' contacts with California, would City Toyota's claims have arisen.  *Ballard, id.*

As in *Ballard* and the many cases cited in this Opposition, it is plain that but for the dealer defendants contacts with California, City Toyota would not have been harmed.  The transfers by which the dealer defendants obtained plaintiff City Toyota's property were carried out at their direction to their auto locators.  Those locators did not operate Toyota dealerships, and they had no interest in obtaining City Toyota's property other than to carry out the dealer defendants' instructions that the property be delivered to the dealer defendants in their respective states.  But for the dealer defendants instructing their locators to secure vehicles to supplement their inventory, and their ultimate instructions for the transfer of those vehicles to their respective inventory in return for payments directly to the locators only, without paying City Toyota anything, City Toyota would not have been injured.

> **C.**     **Defendant Airport Toyota Fails to Present Evidence Establishing a Compelling Case that the Exercise of Jurisdiction in California Would be Unreasonable**

City Toyota has satisfied the first two parts of the Ninth Circuit's test for establishing specific personal jurisdiction over the dealer defendants.  The burden thus shifts to the dealer defendants to make a "compelling case" that the exercise of jurisdiction would not be reasonable and therefore violate due process.  *Dole*, 303 F.3d at 1114; *CollegeSource*, 653 F.3d at 1079.  There are seven factors this court is to consider when evaluating whether defendant Airport Toyota has made that compelling case:

> "(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."  *Dole,* 303 F.3d at 1114.

The dealer defendants fail to present the compelling case of unreasonableness needed to defeat this court's jurisdiction.  Contrary to the dealer defendants' characterization of the facts, each has purposefully injected itself into California by wrongfully taking possession of a California resident's property.  *CollegeSource*, 653 F.3d at 1080 ("Actions directed at a forum resident expected to cause harm in the forum constitute purposeful injection.").  Each dealer defendants knew when it

1    received the transfers identified in Exhibit A to the Complaint that it was receiving them as a result of

2    instructions to its locator and that they came from a California dealership.  Compl., ¶ 28; Moeller

3    Decl., ¶ 9.  Under these circumstances, the purposeful injection factor weighs heavily in City

4    Toyota's favor.  *Dole*, *id*. at 1115.

5         The dealer defendants claim, without any meaningful supporting evidence, that it would be a

6    burden to defend suit in California.  "[W]ith the advances in transportation and telecommunications

7    and the increasing interstate practice of law, any burden [of litigation in a forum other than one's

8    residence] is substantially less than in days past."  *CollegeSource,* 653 F.3d at 1080, quoting *Menken*

9    *v. Emm* (9th Cir. 2207) 503 F.3d 1050.  Each dealer defendant has local counsel for court appearances

10   and its out-of-state counsel will be able to make many of their court appearances by telephone.

11   Discovery does not necessarily require counsel to be present in California, and the location of

12   depositions will be governed by the witness's residence, not the forum where the suit is pending.

13   While litigating in California may result in some inconvenience, inconvenience does not equate to

14   deprivation of due process.  *Ballard v. Savage* (9th Cir. 1995) 65 F.3d 1495, 1501.

15        Many of the dealer defendants claim there is a potential for conflict between the laws of the

16   State of California and the laws of their home state without properly explaining what that conflict

17   may be.  Even assuming there may be some conflict between the laws of each state, this court is

18   obviously qualified to make a choice of law determination and apply the laws of another state to an

19   issue, as appropriate.  Finally, the dealer defendants claim there is an alternative forum for City

20   Toyota's claims, but whether an alternative forum exists is a relevant inquiry only when jurisdiction

21   in the forum state is shown to be unreasonable, which showing the dealer defendants do not make.

22   *CollegeSource,* 653 F.3d at 1080.  Moreover, the dealer defendants do not seek, by way of their

23   motions, a transfer to any alternative forum, demonstrating that their interest is not in litigating this

24   case in another forum, but rather to obtain a dismissal and burden City Toyota with the costs of re-

25   filing in multiple forums with the consequent waste of judicial resources of having to litigate the

26   claims all pending before this court in numerous forums around the country.

27        In sum, the dealer defendants have failed to make the required "compelling" case to defeat

28   this court's jurisdiction.  Indeed, the dealer defendants will be aided by pursuing their defense in this

forum, where they have the ability to unite with its co-defendants in mounting a joint defense.  City Toyota's claims against the defendants can be most efficiently resolved in this single action, which claims will involve the discovery and submission of the same and similar evidence, as well as legal arguments.  The familiarity with the parties, facts and legal arguments that this court will develop makes this forum particularly appropriate to provide the most effective and convenient relief, and having all of the defendants before the same court will avoid duplicative proceedings and eliminate the possibility of inconsistent rulings.  These facts weigh in favor of jurisdiction in California.  *Ballard*, 65 F.3d at 1501.  California also has a strong interest in providing a forum to its resident, City Toyota, to remedy the dealer defendants' tortious conduct.  *Dole*, 303 F.3d at 1116.  Moreover, the vehicles wrongfully diverted to dealer defendants should have been delivered to City Toyota in California, where they would have been sold to California residents and aided the California economy, including through the payment of taxes.  This reinforces the interests of the State of California in retaining jurisdiction over the defendant.  *Fiore*, 657 F.3d at 856.  The seven factors employed by the Ninth Circuit weigh heavily in favor of exercising jurisdiction over the dealer defendants, not against it.  The dealer defendants have failed to overcome the strong presumption of reasonableness in asserting personal jurisdiction over it in this action.  *Dole*, 303 F.3d at 1117.

### D.     The Dealer Defendants' General Agency Arguments Relating to the Locators Misses the Point.

Each of the dealer defendants attempts to establish with conclusory assertions that the respective locators they used were not their agents and that therefore the activities of those locators cannot be the basis for personal jurisdiction.  These general agency arguments miss the point.

"An agent is one who represents another, called the principal, in dealings with third persons.  Such representation is called agency."  Cal. Civ. Code § 2295.  "***An agent for a particular act or transaction is a called a special agent***.  All others are general agents."  Cal. Civ. Code § 2297.  "Agency and independent contractorship are not *necessarily* mutually exclusive legal categories as independent contractor and servant or employee are.  In other words, an agent may also be an independent contractor."  *City of Los Angeles v. Meyers Bros. Parking System, Inc*. (1975) 54

Cal.App.3d 135, 138 (emphasis in original).  To the extent that an independent contractor acts on another's behalf and subject to his or control, he or she is also an agent.  *Ibid*.

Each of the dealer defendants controlled the locators in securing the transfer of ***specific*** "A" status vehicles identified by those dealers directly from the inventory City Toyota in Daly City to the inventory of the various dealer defendants in their respective home states.  As conceded in the various declarations filed on behalf of the dealer defendants, the dealer defendants selected the specific vehicles in question and necessarily directed the locators to secure the transfer of those vehicles on their behalf – as explained above, the locators had no ability to directly make the transfers and could do so only by dealing with another Toyota dealer on behalf of the dealer defendants.  Although the locators may have been independent contractors with respect to the overall conduct of their businesses, they were special agents of the dealer defendants in consummating the ***direct*** transfer of vehicles from City Toyota for the benefit of their dealer defendant principals, and the locators were therefore the instrumentalities through which the dealer defendants caused the events in California to result in the transfer of the vehicles and consequent losses to City Toyota.  Moeller Decl., ¶ 9.  For purposes of personal jurisdiction, the court need go no further than determine that this special agency existed with respect to the transfers in question.  *Ochoa v. J.B. Martin & Sons Farms, Inc.* (9th Cir. 2002) 287 F.3d 1182, 1189; *Z-Rock Communications Corp. v. William A. Exline, Inc.*, (N.D.Cal. 2004) 2004 WL 1771569 at *19 ("In *Ochoa*, an independent contractor was determined to have acted as the defendant corporation's agent because the corporation controlled his work.  *Ochoa* held that the corporation may be subject to personal jurisdiction due to the conduct of its independent contractor who act as agents.").  And, to the extent of this special agency, the dealer defendants are also charged with the knowledge of the locators, *i.e.,* that the "A" status vehicles they received came from the inventory of City Toyota in California and that the transfers by City Toyota's miscreant employee were not authorized.  Cal. Civ. Code § 2332 ("As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."); *Columbia Pictures Corp. v. De Toth* (1987) 87 Cal.App.2d 620, 630 ("This rule of law is not a rebuttable presumption.  It is not a

1   presumption at all.  It is a rule which charges the principal with the knowledge possessed by his

2   agent.").

3   **IV.     CONCLUSION**

4          City Toyota has established a *prima facie* case that this court has personal jurisdiction over

5   each of the dealer defendants, and respectfully submits that their motions to dismiss be denied.

6   Dated: January 10, 2013                                    PUTTERMAN LOGAN & GILES, LLP

7

8

9                                           By  _____/S/_____
                                                William A. Logan, Jr.

10
                                                Attorneys For Plaintiff
11                                              PAG-DALY CITY, LLC, dba City Toyota

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:12-CV-03907-WAH  MEMORANDUM OPP. TO ALL DEALER DEFENDANTS' MOTIONS TO DISMISS